## BENNETT *v*. STATE.

Opinion delivered July 8, 1896.

FORGERY—SUFFICIENCY OF INDICTMENT.—An indictment for forgery which charges that defendant "did unlawfully, etc., make, write, forge, and counterfeit a certain deed," without setting out the particular acts in which the forgery consisted, necessarily imports that it was done without authority, and sufficiently states the manner of its execution.

INDICTMENT—DUPLICITY.—An indictment charging the forgery of a deed and of the acknowledgment thereof charges but one offense.

FORGERY—PRESUMPTION AS TO INTENT.—An intent to defraud must necessarily be inferred by the jury, in a prosecution for forgery, where the evidence shows it to have been committed with the design that the instrument forged should be used as good, and that there was a possibility that some person, or his estate, might be thereby injured or made liable.

VARIANCE — IDEM SONANS. — "Watkins" and "Wadkins" are *idem sonans*, so that there is no variance between an indictment for forging a deed to the former and the deed purporting to convey to the latter.

SAME—WHEN FATAL.—In a prosecution for forgery of a deed, the deed set out *in haec verba* in the indictment recited the consideration thus "five hundred and fifty dollars ($550.00)"; described the land as "north half," etc.; contained the word "sum" in the clause reciting the consideration for release of dower; and concluded, "Witness my hand and seal," etc.   The deed offered in evidence recited the consideration thus, "the sum of five hundred and fifty dollars $550$\frac{00}{100}$ dollars;" described the land as "the north half," etc.; did not contain the word "sum," it being crossed out; and concluded, "Witness my hands and seals," etc.   *Held*, that the variance was fatal.

INDICTMENT — PRESENCE OF STRANGER IN GRAND JURY ROOM.— Although the statute provides that "no person except the prosecuting attorney and the witnesses under examination are permitted to be present while the grand jury are examining a charge, and no person whatever shall be present while the grand jury are deliberating or voting" (Sand. & H. Dig., sec. 2058), it is not cause for quashing the indictment that an attorney acting for the prosecuting attorney examined witnesses before the grand jury if he was not present when the grand jury were deliberating or voting, especially where it is not shown that anything was said to influence the finding of the grand jury.

EVIDENCE—ACTS AND DECLARATIONS OF CONSPIRATOR.—On a trial of one for forgery of a deed, evidence that the person for whose benefit the deed was forged asked another to obtain for him two blank deeds, being the act of a co-conspirator in furtherance of the common design, was admissible; but such person's declaration, in defendant's absence, that defendant had promised to forge the deed, not being in furtherance of such common design, was inadmissible.

TRIAL—REMARKS OF COUNSEL.—Remarks of counsel for the state to the effect that defendant had committed another crime than that charged against him may be prejudicial.

SAME—TAKING TESTIMONY IN DEFENDANT'S ABSENCE.—The taking of testimony in a felony case while defendant is necessarily absent for a few minutes by permission of the court is prejudicial error.

Appeal from Clay Circuit Court, Eastern District.

FELIX G. TAYLOR, Judge.

### STATEMENT BY THE COURT.

At the February term, 1895, of the Craighead circuit court, Jonesboro district, the defendant, J. P. Bennett, was indicted for forgery. The case was removed on change of venue to the eastern district of Clay county, and at the January term thereof, 1896, defendant was convicted, and sentenced to the penitentiary for a term of two years and six months.

The indictment is as follows :

## "INDICTMENT.

Craighead Circuit Court, Jonesboro District, February Term, 1895.

State of Arkansas,

v.

J. P. Bennett.

The grand jury of Craighead county for the Jonesboro district, in the name and by the authority of the State of Arkansas, accuse J. P. Bennett of the crime of forgery, committed as follows, viz.: the said J. P. Bennett, on the 17th day of March, 1894, in the county of Craighead and district aforesaid, did unlawfully, wilfully, knowingly, and feloniously and fraudulently make, write, forge, and counterfeit a certain deed and acknowledgment thereof, in words and figures as follows, to-wit :

### WARRANTY DEED.

#### With Relinquishment of Dower.

Know all men by these presents :

That I, John T. Burns, and ———— , his wife, for and in consideration of five hundred and fifty dollars

($550.00) to us paid by J. N. Watkins do hereby grant, bargain, sell, and convey unto the said J. N. Watkins, and unto his heirs and assigns forever, the following lands lying in the county of Poinsett and State of Arkansas, towit ; East half of section six, township twelve north, range five east, and also north half of section seven, township twelve north, range five east. To have and to hold the same unto the said J. N. Watkins, and unto his heirs and assigns forever, with all appurtenances thereunto belonging. And I, ———, hereby covenant with the said J. N. Watkins that I will forever warrant and defend the title to said lands against all lawful claims whatever. And I, ———, wife of said ———, for and in consideration of the said sum of money, do hereby release and relinquish unto the said ——— all my rights of dower in and to said lands. Witness my hand and seal this 22nd day of August, 1892.                    JOHN T. BURNS,   [Seal.]

[Seal.]

## ACKNOWLEDGMENT.

STATE OF ARKANSAS, )
  County of Craighead. )

Be it remembered that on this day came before me, the undersigned, a justice of the peace within and for the county aforesaid, duly commissioned and acting, John T. Burns, to me well known as the grantor in the foregoing deed, and stated that he had executed the same for the consideration and purposes therein mentioned and set forth.

Witness my hand and seal as such justice this the 22nd day of August, 1892. .

J. P. BENNETT, J. P.

Which said deed and acknowledgment were so unlawfully and fraudulently forged and counterfeited by the said J. P. Bennett for the purpose and with the

intent to defraud and prejudice John T. Burns, pretended grantor in said deed, and the estate and heirs-at-law of the said John T. Burns, against the peace and dignity of the State of Arkansas.

W. W. BANDY,

Prosecuting Attorney Second Judicial District."

The appellant moved to quash the indictment, and one of the grounds of his motion was that N. F. Lamb, not a prosecuting attorney or a witness was present with the grand jury while they were examining this charge. The motion was overruled, and the defendant excepted.

The defendant demurred to the indictment because its allegations were repugnant; because it did not allege the signing of the deed was without authority; because the intent to defraud was not apparent; because it stated a conclusion of law; because it did not state a public offense. The demurrer was overruled, to which defendant excepted.

The evidence tended to show the following facts: In 1894, Joseph N. Watkins was indicted and tried for cutting and removing timber from the lands described in the deed set out in the indictment. In order to enable him to make his defense to the indictment, the appellant, J. P. Bennett, made out a warranty deed, and signed the name of John T. Burns, who was then deceased, to said deed, which purported to convey the land from which the timber was charged to have been cut by Watkins in the indictment against him.

The appellant swore at the trial of Watkins that the deed was genuine. The deed was used as evidence on the trial in behalf of Watkins and he was acquitted.

Watkins and one Stotts, who were connected with Bennett in the forgery, having also sworn on the trial of Watkins that the deed was genuine, were not indicted for perjury in the Watkins case, and, proposing

to testify against Bennett, were not indicted for forgery. At the trial of Bennett, Watkins and Stotts testified substantially to the facts as set out above; and that the sole object and intent in making the deed was to defeat the prosecution against Watkins for taking the timber. It was shown that the signature to the deed was not in John T. Burns' handwriting. It was testified by John Weaver that, before the Watkins case was tried, Watkins came to him, and asked him to go to the office of the Jonesboro Times, and get him two blank deeds ; that he did so ; and that on the same day Watkins had told him that Bennett had promised to make a deed that would clear him.

Watkins and Blalock testified substantially to the same facts. Neely and Moss testified that Burns claimed to own some land, and E. Foster Brown that the records showed that he owned considerable lands.

The following are the chief instructions asked by the plaintiff and given, to which appellant excepted :

3. "If the jury find from the evidence beyond a reasonable doubt that the defendant fraudulently made the deed and acknowledgment in evidence, intending to defraud some one, and that John T. Burns, whose name appears in said deed, was dead at the time said deed was made, and that an heir or heirs of said John T. Burns were living at the time of the making of said deed, and that the said John T. Burns left an estate consisting of real estate or personal property, or both, then you will find defendant guilty.

4. "If you find from the evidence beyond a reasonable doubt that the defendant fraudulently made the deed and acknowledgment in evidence, intending to defraud some one, and that John T. Burns, whose name appears in said deed, was living at the time of making said deed, then you will find the defendant guilty."

The following are the chief instructions asked by defendant and refused, to which he excepted :

2. "The intent to defraud is the very essence of the crime of forgery, and, unless you are satisfied beyond a reasonable doubt upon this point, you will find the defendant not guilty; and the particular intent that must be proved here is an intent to defraud John T. Burns, his heirs or estate, because that is the intent charged in the indictment, and no intent to defraud another or different person can support this charge.

3. "If you believe from the evidence that the forgery was actually committed by the defendant, but that the intent was to defeat a criminal prosecution against J. N. Watkins and not to defraud John T. Burns, his heirs or estate, you will find the defendant not guilty.

10. "The jury are instructed that in this case the indictment charges the forgery to have been committed for the purpose of defrauding John T. Burns, his heirs and estate, and, before the jury can convict the defendant, they must find from the evidence beyond a reasonable doubt that the purpose of the defendant in committing the forgery, if committed, was to defraud either John T. Burns, his heirs, or estate.

12. "If the jury find from the evidence that defendant forged the deed in evidence, a presumption of law would arise that it would have its legal effect to defraud Burns, his heirs, or estate; but this presumption is rebuttable, and if a different intent is proved, and you believe that the intent of defendant was to get witness Watkins out of trouble, and not to defraud Burns, his heirs, or estate, you cannot find defendant guilty.

13. "The state is bound to prove, under this indictment, not only that the deed itself was forged by the defendant, but that the acknowledgment also was forged by him. And you are instructed that if defendant

signed his own name to the acknowledgment, with the intent that it be taken as his own name, that act does not constitute forgery; and if such are the facts of this case, you will find the defendant not guilty.

14. "The state must show that the defendant made the deed in evidence, and that he did it with the intent to defraud John T. Burns, his heirs, or estate, and without his authority. The burden of proof is not upon defendant to show that he had authority to sign Burns' name, but the burden is on the state to show that he did not have authority. And unless the proof here has demonstrated that such authority was not given, you will find the defendant not guilty.

15. "The intent to defraud is the gist of the crime of forgery, and, while the presumption of the law obtains that every sane man contemplates and intends the necessary, natural, and probable consequences of his own acts, this, though a very important circumstance in making the proof necessary upon this point, is not conclusive nor alone sufficient to convict, and should be supplemented by other testimony to avoid a reasonable doubt. And, consequently, the mere fact of the forging of the deed in evidence would not establish the necessary intent, beyond a reasonable doubt, even if not rebutted by proof of a different intent; and, unless there is other proof of the intent to defraud John T. Burns, his heirs or estate, than the mere presumption aforesaid, you will find the defendant not guilty."

The court gave said instruction, numbered 4, asked by the prosecuting attorney, and gave his No. 3 as a modification of defendant's instruction No. 2.

The court modified instruction No. 2, asked by defendant by omitting therefrom the concluding clause, "and no intent to defraud another or different person can support this charge," and also by adding thereto the third instruction aforesaid asked by the prosecuting

attorney; and refused instructions numbered 2, 3, 10, 12, 13, 14, and 15, asked by appellant.

In the course of the argument, certain objections were made by appellant to the remarks of counsel for the prosecution. The language used is set out in the opinion.

The appellant was convicted, and moved for a new trial and an arrest of judgment. One of the grounds upon which a new trial was asked was that the appellant was absent from the court room during the trial. Testimony was introduced in open court to the effect that appellant during the trial had been afflicted with flux, and that, when all the state's witnesses except Neeley, Moss, Lamb and Brown had testified, the state announced that it would rest its case, and the attorneys began to discuss what instructions should be given. At this moment it became necessary that the appellant should retire to the water closet, and he secured permission from the court, and retired for about fifteen or twenty minutes, during which time the state re-opened its case, and Neeley, Moss, Lamb and Brown testified.

A new trial was refused. Motion in arrest of judgment was overruled, and defendant appealed.

Among the errors assigned are the following :

1.   That the court's charge on the question of intent was erroneous, and that there was no evidence to support the intent alleged in the indictment.

2.   That there was a variance between the deed offered in evidence and the deed set out in the indictment.

3.   That N. F. Lamb was present in the grand jury room with the grand jury while they were examining this charge.

4.   That the demurrer to the indictment should have been sustained.

7. That the court erred in permitting Weaver and Blalock to testify as to the acts and declarations of Watkins in appellant's absence, the same not being in furtherance of any common design.

9. That the court erred in refusing to charge that the burden was on the state to prove that Burns' name was signed without his authority.

10. That the argument of the prosecution was reversible error.

11. That the taking of a part of the testimony during the appellant's necessary absence entitled him to a new trial.

*Cate, Hughes & Cate* and *Block & Sullivan*, for appellant.

1. The court's charge on the question of intent was erroneous. When an intent to defraud a particular person is alleged, it must be proved as laid. 2 Bish. Cr. Pro. (3d. Ed.), sec, 420, *et seq.*; 2 East, Crown Law, p. 988. See, also, 51 Ark. 88; 2 Bish. New Cr. Law, sec. 598; 3 Gr. Ev. (14 Ed.), sec. 17, *et seq.*; 103 Cal. 377; 49 Ark. 156; 22 N. W. 50; 26 S. W. 354.

2. The evidence on the question of intent does not support the verdict. There is no evidence of an intent to prejudice Burns, his heirs or estate. 2 Bish. Cr. Law, sec. 596; 95 Ill. 71.

3. There was no evidence of an intent to defraud any one. Bish., Cont., sec. 39, *et seq.* The whole intent was to defeat a criminal prosecution. There can be no forgery without an intent to work pecuniary wrong. 22 S. W. 876, and cases *supra;* 2 Bish. Cr. Law, sec. 601. There was no evidence that Burns left heirs or an estate.

4. The deed admitted in evidence varies from that set out in the indictment. The indictment purports to set out the deed *in haec verba,* and an *exact copy* must

be introduced. 58 Ark. 248; 1 Bish., Cr. Pro., 488*a.* The omission or insertion of a word is fatal. 1 Dougl. 194; 2 Salk. 660; 1 East, 180; Cowp. 229; 2 East, 602; Bish., Cr. Pro., vol. 1, sec. 562; 1 Ore. 269; 14 Oh. St. 55; 86 N. C. 679; 32 Ark. 609. Wadkins and Watkins are not *idem sonans.* 66 Ill. 344; 23 Tex. App. 401; 76 Ill. 188; 7 Ark. 70; 18 Fed. 377; 61 Ind. 447; 107 *id.* 404; Speers (S. C.), 46.

5. The indictment should have been quashed because N. F. Lamb was present in the grand jury room with the grand jury, while they were examining the charge. He was not the prosecuting attorney nor a witness. Sand. & H. Dig., sec. 2058; Wharton, Cr. Pl. & Pr. (9 Ed.), sec. 365. The privilege is not extended to mere temporary assistants, but is limited to the state's attorney and his permanent deputies. Sand. & H. Dig., sec. 6024; Acts 1895, p. 106. Where this provision has been violated, the indictment will be quashed. Whart. Cr. Pl. & Pr. (9 Ed.), sec. 367; 8 So. 673; 13 *id.* 225; 7 Tex. App. 519; 1 Conn. 428; 74 N. C. 194; 16 Fed. 765.

6. The indictment is bad. 1 Ark. 179; 38 *id.* 519; 15 Ohio, 717; 51 Ga. 535; 13 Bush, 267. It only alleged a legal conclusion, and not the acts constituting the forgery. 18 S. W. 356; 29 Tex. 295; 12 Bush, 342; 96 Ky. 40. It is also bad for duplicity. It charges a forgery of the deed *and* of the acknowledgment thereto. Sand. & H. Dig., sec. 2077; 32 Ark. 203; 33 *id.* 176; 36 *id.* 55; 38 *id.* 555; 100 Cal. 188; 63 Ind. 567; 137 Mass. 109.

7. It was error to force defendant to trial upon a defective transcript.

8. The acts and declarations of Watkins were not in furtherance of any common design, and were not admissible in evidence. 59 Ark. 422; 109 Ind. 415; 122 Ill. 1; 3 Gr. Ev. (14 Ed.), sec. 94; 13 N. E. 536; 35 S. W. 172.

9. Want of authority should have been alleged and proved. 25 Tex. 326; 24 Tex. App. 342; 19 N. Y. Sup. 360; 37 N. E. 1040; 96 Ky. 40; 37 N. E. 932.

10. The cause should be reversed for the improper argument of the attorney prosecuting. 1 Bish., New Cr. Pr., sec. 975*a;* 12 Mo. App. 431; 2 S. W. 585; 58 Ark. 353, 473; 150 U. S. 76; 27 S. W. 1109; 11 Ga. 615, 628; 65 N. C. 505; 75 *id.* 306; 41 N. E. 545; 32 S. W. 1149; 5 *id.* 842; 8 Tex. App. 416; 41 N. H. 317; 61 N. W. 246; 65 *id.* 61.

11. The taking of testimony during defendant's necessary absence entitles him to a new trial. 5 Ark. 432; 10 *id.* 518; 44 *id.* 331; 21 L. R. An. 402. Examination of witnesses is a substantive step. 24 S. W. 418; 44 Ark. 331. It is not necessary to show prejudice. 44 Ark. 331; 50 *id.* 492, 499; 10 N. E. 500. See also 52 Ark. 285; 56 *id.* 4; 36 Miss. 531; 7 Ohio, 327; 1 Bish. Cr. Pro. sec. 274; 2 Car. & P. 413; Whart. Cr. Pl. & Pr. (9 Ed.), sec. 544.

*N. F. Lamb* and *E. B. Kinsworthy*, attorney general, for appellee.

1. When the criminal intent is proved, the defendant cannot be heard to say that he did not intend to defraud the one whose name he wrongfully signed, etc. The original guilty motive being proved, the presumption of intention to defraud all against whom the forged instrument can create a liability becomes conclusive. 1 Bish. Cr. Pro. (3 Ed.), 1098; 2 Bish. New Cr. Law, 596-7-8; 118 Mass. 460; 2 Humph. 494; 50 Me. 409; 3 Gr. Ev. 18; 10 N. E. 88; 3 Gray, 441; 1 Whart. Cr. Law, 695, 717-18, 743; 86 Pa. St. 353; Whart. Cr. Ev. 149, 734; 2 Bish. Cr. Pro. 422, 427*a*; 51 Ark. 88, 92. The felonious execution of a document to be used in a litigation is forgery. Whart. Cr. Law, 683, 701;

116 Mo. 605; 67 Mich. 222; 13 Tex. App. 289; Sand. & H. Dig., sec. 1593.

2.   The evidence shows that John T. Burns left at least one heir, a brother.   14 Tex. 503; 8 A. & E. Enc. Law, 480, 481.

3.   The variance is not fatal.   The variances are immaterial.   Wadkins and Watkins are *idem sonans.* Variances must be material; they are not fatal if the meaning is not in any degree altered or obscured. Clarke, Cr. Pr., p. 333; 22 S. E. 351; 30 S. 'W. 807; 31 *id.* 987; 10 N. E. 178.   To be material, a variance must be such as to mislead a party to his prejudice.   Rice, Ev., vol. 3, p. 170; 68 Mo. 286; 19 Vt. 530; 5 Pick. (Mass.), 279; 57 Mo. 205.   See also 38 N. E. 248; 12 S. W. 595; 11 Pac. 493; 38 N. W. 519; 6 S. W. 300; 5 *id.* 243; 3 Gr. Ev., sec. 1080, and notes; 1 *id.* 63–71; Whart. Cr. Pl. & Pr., 173, 273.

4.   The mere presence before the grand jury of another than the official prosecutor, doing no more than to examine the witnesses, offering no advice, making no suggestions, and taking no part in their deliberations, has never been held sufficient to set aside an indictment. Sand. & H. Dig., secs. 2058, 2126; 8 So. 673; 13 *id.* 225; 16 Fed. 765; Whart., Cr. Pl. & Pr., sec. 366.

5.   The indictment is good.   The offense is charged in the language of the statute, our former decisions, and all text writers.   Sand. & H. Dig., sec. 1593; 4 Bl. Com. 247; 1 Bish. New Cr. Law, 572; 1 Whart. Crim. Law, 653; 5 Ark. 349; 51 *id.* 88; *ib.* 242; 48 *id.* 94; 1 Whart. Crim. Law, 727; 2 Bish. Cr. Pro. 400, 401, 437, 473.   It was not necessary to negative the authority to sign the name.   Cases *supra.*   Where the whole instrument is set out, special allegations are unnecessary.   1 Whart. Cr. Law, 678–735; 2 Bish. Cr. Pro. 415, 418*a,* 419.   The acknowledgment was only a part of the deed. Only one offense was charged.   Sand. & H. Dig., secs.

1591, 1605, 1612; Bish. Cr. Pro. 440, 480-1. An indict-
ment charging the forgery of a whole instrument is sus-
tained by proof of the forgery of any material part.
1 Bish. Cr. Pro. 488, 440, 480d; 100 Mass. 12 (18);
1 Whart. Cr. Law, 678; 2 Bish. Cr. Pro. 426.

6. No prejudice to appellant appearing, the cor-
rection of the transcript at any time before judgment
was sufficient. 19 Ark. 178; 35 id. 118.

7. The acts and declarations of Watkins were
admissible. The conversations occurred after the
formation of the conspiracy and before its consumma-
tion. 2 Bish. Cr. Pro., 227–230; 1 id. 1248-9.

8. There was some earnest but no improper argu-
ment of counsel. The subject and range of argument is
necessarily left to the sound discretion of the presiding
judge, and, unless grossly abused to the prejudice of
appellant, is not subject to review by this court. 34
Ark. 650; 4 Am. & Eng. Enc. Law, 875; 55 N. W. 756;
22 S. W. 1021; 23 id. 793; 25 id. 634; 24 id. 420.

9. Bennett's absence was voluntary. 52 Ark. 285;
88 N. Y. 585; 89 N. C. 539; 68 Mo. 22; Whart. Cr. Pl.
& Pr., 554, et seq.

HUGHES, J., (after stating the facts). There was Sufficiency
of indictment
no error in the judgment of the circuit court in over- for forgery.
ruling the demurrer to the indictment. It sufficiently
charges the crime of forgery. It is not necessary to
allege the mode in which the offense was committed,
further than it is stated in this indictment; and it is not
essential that the indictment should state that the forg-
ery was committed by signing the name of another
without his authority, in so many words. The charge
that the defendant "did unlawfully, wilfully, knowingly,
and feloniously and fraudulently make, write, forge, and
counterfeit a certain deed and acknowledgment thereof,
in words and figures, as follows, to-wit" [setting out

a copy of the deed alleged to have been forged], necessarily imports that it was done without authority, and sufficiently states the manner of its execution. 2 Bishop's Cr. Pro., sec. 437. It is not necessary to set out the particular acts in which the forgery consisted. *State* v. *Maas*, 37 La. An. 292; *People* v. *Van Alstine*, 57 Mich. 69; *People* v. *Marion*, 28 Mich. 255. And this is according to the weight of authority. But it is said in *People* v. *Marion*, 28 Mich. 255, that the omitting to do so is a practice not to be commended, as an instrument may be forged in various ways, and fairness to the accused would seem to require it. The case of *Com.* v. *Williams*, 13 Bush (Ky.), 267, holds that it is necessary to do it. But this seems to be against the weight of authority. Where the prosecutor undertakes to set out in what the forgery consisted, he is bound to state it truly, so as not to mislead the defendant, and to prove it as stated. *People* v. *Marion*, 28 Mich. 255.

Indictment held not duplex.

We are of the opinion that the acknowledgment was only a part of the deed, and that the indictment in charging forgery of the deed and of the acknowledgment charges but one offense.

When intent to forge presumed.

One of the errors assigned in the motion for a new trial is "that the court's charge on the question of intent was erroneous, and there was no evidence to support the intent alleged in the indictment," which is that Bennett made the deed with the intent to defraud Burns, his heirs and estate. The counsel for the defendant contend, with much earnestness and plausibility, that, inasmuch as the evidence was to the effect that Bennett forged the deed for the sole purpose of use as evidence for the defendant on the trial of Watkins, charged with taking timber from the land of another, the presumption of intent to defraud Burns, his estate and heirs, was fully rebutted, and that the defendant was not guilty of forgery, within the meaning of the law.

Bishop, in his New Criminal Law (vol. 2, sec. 5978), says: "We have seen that forgery is an attempt to cheat. And an attempt, within the ordinary doctrine, exists only where the wrongdoer's intention is specific,—to do the particular criminal act. Whence it might be inferred that there can be forgery only where there is a specific intent to effect the particular fraud which the false writing is adapted to accomplish. But we are about to see that the adjudged law is not exactly so. In the ordinary language of the books, there must be, in the mind of the wrongdoer, an intent to defraud a particular person or persons; though no one need in fact be cheated. Yet the intent is not necessarily, in truth, exactly this; it is rather that the instrument forged shall be used as good. Consequently, if the forger means, for instance, to take up the bill of exchange or promissory note when it becomes due, or even if he does take it up, so as to prevent any injury falling upon any person; * * * * * or if a party forges a deposition to be used in court, stating merely what is true, to enforce a just claim,—he commits the offence, the law inferring conclusively the intent to defraud. And from the intent to pass as good the law draws the conclusion of the intent to defraud whatever person may be defrauded. Ordinarily there are two persons who may legally be defrauded,—the one whose name is forged, and the one to whom the forged instrument is to be passed; therefore the indictment may lay the intent to be to defraud either, and it will be sustained by proof of an intent to pass as good, though there is shown no intent to defraud the particular person." (See the authorities cited to support the doctrine of these sections. They are numerous.) There must be a possibility of fraud, but that is sufficient. The making alone of the false writing, with the evil intent, is sufficient. No fraud need be actually perpetrated.

2 Bishop, New Cr. Law, secs. 599, 602; *Com.* v. *Henry,* 118 Mass. 460; *State* v. *Kimball,* 50 Maine, 409. "Where the intent alleged is to defraud the person whose name is forged, it should be presumed from the forgery, without further proof." 2 Bishop, Cr. Pro., sec. 427; *Henderson* v. *State,* 14 Tex. 503; *Rounds* v. *State,* 78 Me. 48.

The deed in this case, as appears from the evidence, was forged with an evil intent, was designed and intended to be used as good, and as material evidence on the trial of Watkins upon a criminal charge, and was so used, and procured the acquittal of Watkins. It purports to be the warranty deed of John T. Burns, and it requires no argument to show that, had it been genuine, it might have made the estate or heirs of Burns liable, if the warranty should be broken, or assets descend to the heirs. It is shown that he left an estate, and a brother him surviving. We make no question that the proof of these facts is sufficient to sustain the charge of forgery. 1 Wharton, Cr. Law, sec. 743; 3 Greenleaf, Ev., secs. 18, 103; *Billings* v. *State,* 107 Ind. 54; *West* v. *State,* 22 N. J. L., 212; *United States* v. *Shellmire,* Baldw. (C. C.), 370.

"The courts are not entirely agreed as to how far the law will presume, in criminal cases, that a man intends to accomplish results which are the material and probable consequences of acts which he does knowingly and intentionally. On the one hand, some courts have laid down the rule broadly that the law will presume such intention, and have acted upon the rule so laid down, with no intimation that there might be exceptional cases in which the rule would not apply." Note to *People* v. *Flack,* 11 L. R. A., 810, 811, under head "Presumption as to Natural Consequences of Acts." "The New York courts hold that the rule that a party intends the ordinary and probable consequences of his acts is only a presumption, which may be rebutted by

competent evidence, and is for the jury." *Id.* 811.
"But even in that state it has been stated that, whether
it be denominated a presumption of law or a presumption
of fact, an intent to kill would be necessarily inferred
from a voluntary and wilful act, which has a direct
tendency to destroy another's life, and which in fact
does so." *People* v. *Majone*, 1 N. Y. Cr. R. 89.

An intent to defraud must necessarily be inferred by
the jury, in a prosecution for forgery, where the evidence
shows it to have been committed with the design that
the instrument forged should be used as good, and it is
also shown that there was a possibility that some per-
son might be injured thereby, or that person's estate
might be thereby injured or made liable. An estate is
a "person," in contemplation of law.

The second ground of the motion for a new trial is
"that there was a variance between the deed offered in
evidence and the deed set out in the indictment."

*When variance between indictment and evidence fatal.*

The deed admitted in evidence, in setting out the
consideration, has it thus: "The sum of five hundred
and fifty dollars $550$\frac{00}{100}$ dollars, to us paid by J. N. Wad-
kins." The deed set out in the indictment has it thus:
"Five hundred and fifty dollars ($550.00) to us paid by
J. N. Watkins." In describing the lands, as to one
piece, the deed offered in evidence has it "the north half,"
while the deed set out in the indictment has it "north
half," omitting the word "the" before "north half." In
the blank form for relinquishment of dower in the deed
offered in evidence, in setting out the consideration, the
word "s~~ix~~m" is crossed as indicated, while in the deed
set out in the indictment it is not, but appears without
the cross marks, thus, "sum." Again, the deed offered
in evidence concludes: "Witness my hands and seals
this 22 day of August, 1892," while the deed set out in
the indictment concludes: "Witness my hand and seal
this 22nd day of August, 1892."

It is the opinion of the court that "Wadkins" and "Watkins" are *"idem sonans,"* and that there is no material variance in the using of "d" in one deed, and "t" in the other, in setting out the name of the grantee, and we deem it unnecessary to cite authorities as to this.

It is the opinion of a majority of the court that, as the indictment professes to set out an exact copy of the deed charged to have been forged, the other numerous variances between it and the deed offered in evidence, taken altogether, are material, and that, in contemplationof law, the two deeds are not the same. The words and figures which are a part of the deed set out in the indictment are said to be descriptive of the deed charged to have been forged, and a defendant could not have been convicted on such a charge by producing in evidence a deed not having these words and figures in it. *McDonnell* v. *State*, 58 Ark. 242, and cases cited. If the deed had been set out according to its purport, it might have been proved by the one offered in evidence; but, as the indictment professes to set it out in words and figures, it was necessary to prove it by an exact copy. *Com.* v. *Parmenter*, 5 Pick. 279; *State* v. *Morton*, 27 Vt. 310; *Rex* v. *Powell*, 2 East, P. C. 976.

We do not deem it important to discuss the instructions given or refused, as the opinion sufficiently, we think, states the court's views of the question of law involved. We will state, however, that, while the instructions for the state probably contain no reversible error, we think they should have embodied the idea that if the jury found from the evidence that the deed was made to be used as good, and that there was possibility of another's being made liable or injured thereby, a presumption of fraud necessarily arose from the proof of these facts.

The third ground of the motion for new trial is "that N. F. Lamb was present in the grand jury room while they were examining this charge." The evidence shows that Mr. Lamb was neither prosecuting attorney, nor deputy prosecuting attorney, and that he was not requested by the prosecuting attorney to be present in the grand jury room, but that he consulted the prosecuting attorney before going into the room, and it seems that he went by the consent of the prosecuting attorney. He testified that he examined the witnesses, and that he said nothing to influence the grand jury in their determination. It is not contended that he was present while the grand jury were deliberating or voting on the charge. Section 2058 of Sandels & Hill's Digest provides that "no person except the prosecuting attorney and the witnesses under examination are permitted to be present while the grand jury are examining a charge, and no person whatever shall be present while the grand jury are deliberating or voting on a charge." The importance of this provision cannot be overestimated, when we consider that the "secrecy of the grand jury room, and the privity and impartiality of that inquest," may prevent the presentment of any one "through envy, hatred, or malice." *Rothschild* v. *State*, 7 Tex. App. 519. But Mr. Lamb, while present in the grand jury room examining the witnesses, by the consent of the prosecuting attorney, was acting in his stead; and we are of the opinion that, as he was not present when the grand jury were deliberating or voting on the charge, his presence, in the capacity in which he was acting, is not cause for quashing the indictment, especially as it is shown that nothing was said by him to influence the finding of the grand jury.

The seventh ground of the motion for a new trial is "that the court erred in permitting Weaver and Blalock to testify as to acts and declarations of Watkins

in appellant's absence, the same not being in further-
ance of any common design." That "Watkins procured
Weaver to obtain for him two blank forms for a deed"
was competent evidence, being the act of a co-conspir-
ator in the furtherance of the common design, having
occurred after the conspiracy was formed, and before it
was ended. But what Watkins told Weaver later in
the same day (*i. e.*, that the appellant "had promised to
make a deed which would clear him") was incompetent;
the appellant not being present when the conversation
occurred, and it not being in furtherance of the com-
mon design. The conversation between Watkins and
Blalock, in the absence of the defendant, in which the
former told the latter that appellant had proposed to
make a deed which would arrange the timber trouble,
was inadmissible, not having been something done or
said in furtherance of the common design to forge the
deed.   1 Greenleaf, Ev. 111; 3 *id.* 94.

When remarks of counsel prejudicial.    The tenth ground of the motion for a new trial is,
in substance, that in his argument before the jury the
counsel for the state made improper and prejudicial
remarks. The remarks of Mr. Lamb, of counsel for
the state, in making his argument to the jury, were as
follows: "The only relief this county can get from
men who will commit forgery, who will go to Harris-
burg and commit perjury, and who will commit sub-
ornation of perjury, is to send such men as Polk Bennett
to the penitentiary. The defendant knows he has com-
mitted forgery, and that he committed perjury in swear-
ing that Burns had signed the deed, and that he has
committed subornation of perjury." To which remarks
the defendant at the time objected, whereupon Attorney
Lamb said: "I will say, then, he swore a falsehood at
Harrisburg." To which the defendant objected. His
objection was overruled, and he excepted. The defend-
ant was not on trial for perjury or subornation of per-

jury, and we think the remarks were improper, and might have been prejudicial to the defendant. Whether they are grounds for reversal in this case, we need not decide. *Vaughan* v. *State*, 58 Ark. 353; *Holder* v. *State*, 58 Ark. 473.

The eleventh ground of the motion for a new trial is "that the taking of a part of the testimony during the appellant's necessary absence entitled him to a new trial." The record shows that appellant, by the permission of the court, retired to the water closet for about fifteen minutes ; that he was suffering with flux at the time, which made his retirement and absence for the time necessary; that there was no refusal upon his part to be confronted with the witnesses, as in *Gore* v. *State*, 52 Ark. 285; that his retirement and absence were made necessary by his physical condition, and were voluntary only because necessary. In a prosecution for felony, the accused must be present in person whenever any substantive step is taken in his case. It is a constitutional right of his to be confronted with the witnesses. In this case, while the defendant was absent, several witnesses (at least three) were examined. The examination of witnesses is an important and substantive step in a criminal prosecution, and it is not required that defendant should show prejudice on account of his absence. *Sneed* v. *State*, 5 Ark. 431; *Cole* v. *State*, 10 Ark. 318; *Bearden* v. *State*, 44 Ark. 331; *Mabry* v. *State*, 50 Ark. 492. It was error in this case to proceed, as the court did in the trial of this case, while the defendant was necessarily absent by permission of the court.

*Effect of taking testimony in defendant's absence.*

We have found it unnecessary to refer to the grounds for new trial in appellant's motion, which are based on the court's refusal to grant motion for postponement of the trial, or those tending to that end.

For the errors indicated, the judgment is reversed, and the cause is remanded for a new trial.